**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dylan Consulting Services LLC,<br><br>Plaintiff,<br><br>v.<br><br>SingleCare Services LLC,<br><br>Defendant. | No. CV-16-02984-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment of Defendant SingleCare Services LLC. (Doc. 42). For the following reasons, the Court grants the motion in part and denies the motion in part.

**BACKGROUND**

SingleCare Services ("SingleCare") is a healthcare company that issues membership cards, entitling enrollees to discounts at specified healthcare providers. Dylan Consulting Services LLC ("Dylan") is a consulting firm solely owned and operated by Wayne Goshkarian. In early 2016, SingleCare was a relatively new company looking to grow their networks of enrollees and partnering healthcare providers. SingleCare relies on distribution partners to market their discount card to potential enrollees. On April 18, 2016, SingleCare and Dylan entered into contracts, whereby Dylan would identify potential distribution partners for SingleCare.

SingleCare and Dylan entered into two contracts to this effect. First, under the Group Sales Agreement ("GSA"), Dylan would introduce distribution partners to Single

Care and receive a commission from any enrollees that the distribution partner signs up. Second, under the Retail Sales Agreement ("RSA"), Dylan would essentially act as a distribution partner itself and sign up enrollees directly, also receiving a commission for each enrollment. Both parties agree that all the work Dylan completed and for which it received compensation during the contract was under the GSA. (Doc. 44, ¶ 14; Doc. 52, ¶ 14).

Section One of the GSA states that "[Dylan] agrees to introduce and represent SingleCare to large employer group customers, associations, affinity groups and/or other member aggregators for the purpose of enrolling members or employees into the SingleCare program." (Doc. 43, Ex. 5). The contract further provides that "[Dylan] and SingleCare shall work together to qualify introductions as viable. [Dylan] shall provide SingleCare with the name, market segment and proposed distribution method for each prospect in advance of an introduction. Upon mutual agreement that the prospect is viable, an introduction via email, telephone call or in-person meeting shall be made." *Id*. The contract terminates two years after the date of signing or if "[Dylan] purposefully misrepresents SingleCare or otherwise fails to comply with Section [One]." *Id*.

SingleCare terminated both the GSA and the RSA on July 29, 2016. (Doc. 43, Ex. 11). SingleCare alleges that it is justified in terminating the GSA because Dylan materially breached the GSA contract by failing to comply with Section One's requirement that Dylan provide SingleCare with information about potential distribution partners before recruiting them as distribution partners. Dylan brought suit against SingleCare alleging breach of contract. (Doc. 1).

## DISCUSSION

**I. Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). When the nonmoving party "bear[s] the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

**II. Analysis**

Defendant, SingleCare, seeks summary judgment (1) because Dylan materially breached the GSA contract, and thus SingleCare was entitled to terminate the contract for cause and (2) Dylan's measure of damages under either the GSA or the RSA are too speculative to sustain a claim.

**A. Material Breach of the GSA**

Under Arizona law, a claim for breach of contract has three elements: (1) a contract exists between the plaintiff and the defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to the plaintiff. *See Frank Lloyd Wright Foundation v. Kroeter*, 697 F.Supp.2d 1118, 1125 (D. Ariz. 2010). An "uncured material breach of contract relieves the non-breaching party from the duty to perform and can discharge that party from the contract." *Murphy Farrell Development, LLLP v. Sourant*, 272 P.3d 355, 364 (Ariz. Ct. App. 2012) (citing *Zancanaro v. Cross*, 339 P.2d 746, 750 (Ariz. 1959). A claim of material breach is an affirmative defense to a breach of contract claim. *See Frank Lloyd Wright Foundation* at 1133. Therefore, the burden is on the party asserting material breach, here, SingleCare, to demonstrate that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. *Id*.

///

Not every breach of a contract is a material breach. A breach is material breach when "(1) a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions or (2) fails to do something required by the contract which is so important that the breach defeats the very purpose of the contract." *Dialog4 System Engineering GmbH v. Circuit Research Labs, Inc.*, 622 F.Supp.2d 814, 822 (D. Ariz. 2009). To determine whether a breach is material, "the court or jury should consider the nature of the promised performance, the purpose of the contract, and the extent to which any deficiencies in performance have defeated that purpose." *Id.* (citations omitted). The determination of whether a breach is material "is a question of fact for the jury to resolve . . . unless the evidence adduced is susceptible of only one reasonable interpretation." *Id.* (internal citations and quotations omitted). The allegedly breaching party "[o]rdinarily [has] some period of time between suspension [of the contract] and discharge [of the contract], and during this period a party may cure his failure [or breach]." Restatement (Second) of Contracts § 242 comment a; *see also Murphy Farrell*, 272 P.3d at 364 (citing the Restatement). It is only an "*uncured* material breach of contract [which] relieves the non-breaching party from the duty to perform." *Murphy Farrell*, 272 P.3d at 364 (emphasis added). Therefore, a "non-breaching party is only discharged from the contract if (1) a material breach occurs and (2) a cure is no longer possible." *Marquette Venture Partners II, L.P. v. Leonesio*, No. 1 CA-CV 09-0166, 2011 WL 1867517, *4 (Ariz. Ct. App. 2011).

Material questions of fact exist as to whether Dylan materially breached the contract with SingleCare. First, the parties dispute whether the provision in the contract requiring Dylan to "provide SingleCare with the name, market segment and proposed distribution method for each prospect in advance of an introduction" is a material term of the contract. SingleCare argues that this term is material because SingleCare prioritizes finding enrollees who are likely to utilize the discount card and because SingleCare wants to control the information being sent to potential distribution partners. (Doc. 44, ¶¶ 3, 11, 22). Dylan, on the other hand, claims that SingleCare instructed Dylan to find as many

enrollees as possible, because healthcare providers would only agree to offer discounts if there was already a large pool of enrollees. (Doc. 52, ¶¶ 3, 5, 9, 10). Under Dylan's understanding, SingleCare would not need to prioritize enrollees likely to utilize the discount card, thus making it less necessary for SingleCare to screen potential distribution partners. Second, the parties dispute whether Dylan breached the contract. SingleCare alleges that Dylan repeatedly failed to discuss potential distribution partners with SingleCare before sending information to the potential distribution partners. (Doc. 44, ¶¶ 29, 30, 39, 40, 42, 44). Dylan, however, states that it was in constant communication with SingleCare's Vice President of Field Sales & Marketing, David Slepak, both by phone and by copying Mr. Slepak on almost all emails sent by Dylan. (Doc. 52, ¶¶ 21, 22, 25, 29, 30). Dylan also states that it provided a list of 500 potential distribution partners to SingleCare at the outset and that SingleCare gave Dylan approval to contact these prospects. Finally, there are disputes of fact over whether SingleCare warned Dylan of the alleged breach and gave Dylan an opportunity to cure. SingleCare states that, as soon as they realized potential distribution partners were being contacted without prior approval, they informed Dylan. They did this by asking Dylan to focus on specific kinds of distribution partners and telling Dylan that it was important to discuss partnerships first. (Doc. 44, ¶¶ 36, 37, 41). Dylan, however, characterizes the termination as out of the blue. (Doc. 52, ¶¶ 30, 37, 39, 43). The burden is on SingleCare to demonstrate there is no material dispute of fact as to its affirmative defense, and SingleCare has not met that burden. These factual disputes prevent summary judgment.

### B. Damages under the GSA

A plaintiff must show that a breach of contract resulted in damages to the plaintiff. Therefore, "[d]amages that are speculative, remote or uncertain may not form the basis of a judgment." *Coury Bros. Ranches, Inc. v. Ellsworth*, 446 P.2d 458, 464 (Ariz. 1968). But, "[p]roof of the fact of damages must be of a higher order than proof of the amount of damages." *Id*; *see also Harris Cattle Co. v. Paradise Motors, Inc.*, 448 P.2d 866, 868 (Ariz. 1968) ("The rule which precludes the recovery of uncertain damages applies to

such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount."). Still, although "doubts as to the extent of the injury should be resolved in favor of the innocent plaintiff and against the wrongdoer," "it cannot dispel [the] requirement that the plaintiff's evidence provide some basis for estimating his loss." *Gilmore v. Cohen*, 386 P.2d 81, 82 (Ariz. 1963). Determining the evidence required to prove damages "depends on the individual circumstances of each case." *Short v. Riley*, 724 P.2d 1252, 1255 (Ariz. Ct. App. 1986) (noting that in determining damages for lost profits of a new business, "courts have considered the profit history from a similar business operated by the plaintiff at a different location"). It is "the genius of the common law that difficult damage questions are left to juries." *Felder v. Physiotherapy Associates*, 158 P.3d 877, 886 (Ariz. Ct. App. 2007) (quoting *Walker v. Mart*, 790 P.2d 735, 739 (Ariz. 1990)).

SingleCare argues that Dylan failed to demonstrate damage from the contract termination in two ways. First, SingleCare argues that because the right to accept a contract with any potential distribution partner under the GSA always rested exclusively with SingleCare itself, Dylan cannot establish that the termination of the contract resulted in any harm. Put differently, SingleCare is arguing that Dylan cannot establish the fact of damages for any alleged breach of the GSA. However, Dylan notes that the contract requires both parties to "work in good faith to convert prospects to clients in a timely manner." (Doc. 43, Ex. 5; Doc. 52, ¶¶ 25, 28). SingleCare characterizes the contract as "terminable at will" due to the company's discretion in deciding whether to accept distribution partners. (Doc. 53, p. 3). But this argument reads out the good faith limitation. With twenty-one months left on the contract, the conversion of some potential distribution partners into actual distribution partners, and a starting list of 500 potential distribution partners, the likelihood that Dylan would have earned commissions from newly established distribution partners is not unacceptably speculative. At the very least, there is a material dispute of fact as to whether Dylan would have produced additional distribution partners that SingleCare, acting in good faith, would have accepted.

Second, SingleCare asserts that Dylan's calculation of damages is too speculative. SingleCare terminated the contract with Dylan after three months. Dylan only began earning his commission in June 2016, making $9,594.00 in that month. Dylan calculates its damages by assuming that it would continue to make $9,594.00 every month from the distribution partners who resulted in that commission in June 2016. Dylan then also assumes that it would be able to find new distribution partners who could earn that same commission in every future month of the contract. A material dispute of fact exists as to what Dylan would have been able to earn in commissions had the contract continued for the duration. That question is for the jury. Dylan has proposed a method of calculation that the jury is able to evaluate, accept, reject, or accept in part. Dylan has put forward sufficient evidence of actual damages and the amount of damages, and so disputes of fact on these issues defeat summary judgment.

### C. The RSA

Both parties agree that during the three months that the contract was in force Dylan did not earn any revenue based on the RSA. SingleCare characterizes the RSA as "an afterthought to cover any situations in which Dylan enrolled qualified individuals directly and did not play a significant role in the parties' relationship." (Doc. 42, n. 2). Dylan "concedes that [its] efforts were to focus on the GSA." (Doc. 51, p. 3). Unlike the GSA, SingleCare has not asserted that its termination of the RSA is justified by Dylan's breach of it; rather it asserts that up to the time of its cancellation by SingleCare, Dylan earned no revenue pursuant to it, and has established no damage theory upon which to recover. (Doc. 42, n. 2) ("[T]he Company also seeks summary judgment on Dylan's claim for breach of the RSA because Dylan cannot demonstrate any damages under the RSA.").

When the nonmoving party "bear[s] the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Celotex Corp.*, 477 U.S. at 322–23. In its Motion, SingleCare

raised the argument that Dylan cannot establish any damages under the RSA. As damages are an essential element of a breach of contract claim under Arizona law, Dylan would bear the burden of proof on this element at trial. In response to SingleCare's Motion, Dylan made no attempt to put forward a theory on which damages might be calculated. Dylan only discusses damages in the context of the GSA. (Doc. 51, pp. 7–8) (noting that revenue "would easily have been replicated for the remainder of the *GSA period*" and that "Dylan's calculation, of course, is based on SingleCare honoring the precise terms *of the GSA*") (emphasis added). Because Dylan cannot show any past damages or any efforts on working pursuant to the RSA, Dylan has failed to make a showing sufficient to establish a genuine dispute of fact. The Court grants SingleCare's Motion for Summary Judgment as to the breach of contract of the RSA.

## CONCLUSION

Material questions of fact remain over whether Dylan materially breached the contracts, excusing SingleCare from performance. Dylan has sufficiently established damage and proposed a method of calculating damages for the question to go to the jury. Therefore, summary judgment is inappropriate.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment of SingleCare Services, LLC (Doc. 42) is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) The Motion for Summary Judgment as to the GSA is **DENIED**;

(2) The Motion for Summary Judgment as to the RSA is **GRANTED**.

Dated this 26th day of March, 2018.

Honorable G. Murray Snow
United States District Judge