1   Kate E. Frenzinger (State Bar No. 023100)
    **Rusing Lopez & Lizardi, P.L.L.C.**
2   2375 E. Camelback Rd., Ste. 600
    Phoenix, Arizona 85016
3   Telephone: (480) 626-1391
    Facsimile (520) 529-4262
4   kfrenzinger@rllaz.com

5   David Barmak (Admitted *Pro Hac Vice*)
    Donald Carrington Davis (Admitted *Pro Hac Vice*)
6   **Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.**
7   701 Pennsylvania Avenue N.W., Suite 900
    Washington, DC, 20004
8   (202) 434-7300
    DBarmak@mintz.com
9   DCDavis@mintz.com

10

11  *Attorneys for Defendant SingleCare Services, LLC*

12              **IN THE UNITED STATES DISTRICT COURT**

13                **FOR THE DISTRICT OF ARIZONA**

14  Dylan Consulting Services, LLC,          Case No. 2:16-CV-02984-GMS

15                  Plaintiff,

16  v.                                       **JOINT PROPOSED PRETRIAL ORDER**

17  SingleCare Services, LLC,

18                  Defendant.

19

20          The following is the joint Proposed Final Pretrial Order to be considered at the Final

21  Pretrial Conference set for **June 15, 2018 at 10:30am.**

22  **A.      TRIAL COUNSEL FOR THE PARTIES**

23          Include mailing addresses, office phone numbers, fax numbers, and email addresses.

Plaintiff:

Mark B. Pyper, State Bar No. 011051
BARTON PYPER, PLLC
4747 E. Elliott Rd., Ste. 29-517
Phoenix, AZ 85044
(602) 615-1841
pyperlaw@aol.com

Defendant:

Kate E. Frenzinger, State Bar No. 023100
RUSING, LOPEZ & LIZARDI, PLLC
2375 E. Camelback Rd. Suite 600
Phoenix, AZ 85016
(480) 626-1391
KFrenzinger@rllaz.com

David Barmak (Admitted Pro Hac Vice)
Donald C. Davis (Admitted Pro Hac Vice)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.
701 Pennsylvania Avenue N.W., Suite 900
Washington, DC, 20004
(202) 434-7300
DBarmak@mintz.com
DCDavis@mintz.com

**B.    STATEMENT OF JURISDICTION**

1.    The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiff is a citizen of Arizona and Defendant is a foreign corporation with its principal place of business in Ohio, and the amount in controversy exceeds $75,000.

2.    Jurisdiction is not disputed.

**C.    STIPULATIONS AND UNCONTESTED FACTS AND LAW**

**1.**    The following material facts are admitted by the parties and require no proof:

2

Fact # 1: Plaintiff Dylan Consulting Services, LLC ("Dylan Consulting") is an Arizona limited liability company.

Fact # 2: Defendant SingleCare Services, LLC is a Delaware limited liability company with its principal place of business in Columbus, Ohio.

Fact # 3: Plaintiff and Defendant entered into a contract referred to as the "Group Sales Agreement" ("GSA") on April 18, 2016.

Fact # 4: SingleCare notified Plaintiff in writing on July 29, 2016 that it considered the GSA terminated for cause effective immediately because Plaintiff failed to comply with Section 1 of the GSA.

**2.** The following material facts, although not admitted, will not be contested at trial by evidence to the contrary:

None.

**3.** The following issues of law are uncontested and stipulated to by the parties:

None.

**D. CONTESTED ISSUES OF FACT AND LAW**

**1.** The following are the material issues of fact to be tried and decided:

**Issue # 1: Whether SingleCare was entitled to terminate the GSA pursuant to Section 3.1.2 due to Dylan's failure to comply with Section 1 of the GSA.**

*Plaintiff Contends*:

Dylan did not fail to comply with Section 1 of the GSA. Dylan worked with SingleCare on a virtual daily basis to keep it apprised of everything it did, and SingleCare knew and approved of Dylan's methods of procuring Distribution Partners. At no time did Dylan enter into any contract on behalf of SingleCare. SingleCare terminated the GSA only after Dylan complained

that SingleCare was changing the material terms of the Distribution Partners'

commission agreement.

*Defendant Contends*:

SingleCare was entitled to terminate the GSA pursuant to Section 3.1.2

because Plaintiff repeatedly failed to comply with Section 1 of the GSA, by

(1) failing to provide SingleCare with the name, market segment and

proposed distribution method for each prospect in advance of making an

introduction, (2) sending SingleCare contracts to individuals and entities

without SingleCare's express prior approval; and (3) sub-contracting with

individuals to perform his duties under the GSA.. Approximately 17

individuals and/or entities signed SingleCare contracts that Plaintiff sent to

them without first having the contracts vetted and approved by SingleCare.

**Issue # 2:   Whether Plaintiff incurred any damage as a result of SingleCare's termination of the GSA.**

*Plaintiff Contends*:

Dylan produced net commissions of just under $10,000 within its third

month of a 24-month agreement.  Dylan would have continued to produce at

least this amount every month through the procurement of new and additional

Distribution Partners, each month representing a new and additional source of

commission revenue compounding on the previous month, such that over the

24-month life of the GSA, Dylan's net commissions would have yielded at

least $3,367,494.00.

*Defendant Contends*:

Plaintiff was not damaged as a result of SingleCare's termination

because SingleCare paid Plaintiff commissions under the GSA for all new

enrollments and utilizations procured by distribution partners introduced to

SingleCare by Plaintiff and with whom SingleCare entered into contracts. Further, as Plaintiff has admitted, SingleCare had the right to accept or reject introductions to prospects at-will, meaning that SingleCare had no obligation to contract with any particular distribution partner that Dylan Consulting claims it might have brought to SingleCare.

**Issue # 3:  Whether Plaintiff has suffered non-speculative damages.**

*Plaintiff Contends*:

Dylan's damages are not speculative, but based on actual performance that would have both continued and repeated each month over the 24-month life of the GSA.  Dylan would easily have procured the Distribution Partners willing to enroll SingleCare customers at $10 each on a monthly basis, sufficient to generate at least $10,000 in net commissions to plaintiff for each new month.  In other words, every month, Plaintiff would have been able  to procure Distribution Partners who would have generated enough commissions so that plaintiff would have yielded $10,000 in net commissions for the remainder of the GSA.  Plaintiff was well in its way to bringing in the tens of thousands of new enrollees each month when Defendant chose to terminate the GSA.

*Defendant Contends*:

Plaintiff cannot prove with reasonable certainty that it would have continued to earn commissions at any particular rate, or that any of the distribution partners it might have properly introduced to SingleCare would

have been approved by and engaged by SingleCare.  In fact, as Plaintiff admits, SingleCare was under no obligation to contract with any future distribution partners and therefore could have avoided any future commission obligations to Plaintiff simply by declining to contract with prospects he introduced to SingleCare. Further, Plaintiff has only produced speculations on the amount of revenues it allegedly lost; it has not provided evidence of or calculated its lost profits at all.

**Issue # 4**:  **Whether Plaintiff materially misrepresented its relationships and abilities in order to induce SingleCare to contract with Plaintiff.**

*Plaintiff Contends*:

Dylan made no material misrepresentations regarding its abilities but showed SingleCare how to effectively market its discount card to large businesses, including enrollment companies, and insurance companies, using Dylan's network of associates, such that in Dylan's third month, SingleCare paid $9,594.00 in net commissions.   When Dylan began working for SingleCare, SingleCare had enrolled less than 3,000 customers.

*Defendant Contends*:

Plaintiff materially misrepresented to SingleCare that it could leverage significant relationships with "large employer group customers, associations, affinity groups and/or other member aggregators."   By engaging in a campaign of blunderbuss cold-call emails and phone calls to a large list of businesses and individuals that Plaintiff had collected, including through an untrained part-time employee, Plaintiff demonstrated that it did not have meaningful business relationships with those entities that would have been valuable to SingleCare to identify qualified distribution partners.

6

1

2    **Issue #5**:    **Whether   SingleCare   relied   on   Plaintiff's   material**

3    **misrepresentations in deciding whether to contractually engage it as a**

4    **consultant.**

5    *Plaintiff Contends*:

6           Dylan    made    no    misrepresentations,    let    alone    material

7    misrepresentations, for SingleCare to rely on.  Dylan procured approximately

8    20 prospective Distribution Partners willing to distribute the SingleCare card

9    to prospective SingleCare customers within the first three months of the GSA.

10   It  was  only  after  Dylan  objected  to  SingleCare's  modifications  of  the

11   Distribution Partner's material commission terms did SingleCare undertake to

12   terminate Dylan's services.

13   *Defendant Contends*:

14          SingleCare relied on Plaintiff's representations about the strength of its

15   relationships with "large employer group customers, associations, affinity

16   groups and/or other member aggregators" when it decided to engage Plaintiff

17   as a consultant.  SingleCare relied on Plaintiff's representations that it could

18   significantly increase SingleCare card utilization by connecting SingleCare to

19   the  kinds  of  distribution  partners  that  would  be  most  likely  to  enroll  new

20   active SingleCare members.

21   **Issue #6**:    **Whether   Defendant's   Failure   to   Allow   Plaintiff   an**

22   **Opportunity to Cure an Alleged Breach was Itself a Breach of the GSA.**

23   *Plaintiff Contends:*

24

25

Defendant never informed Dylan that it would terminate the GSA if certain action were not taken, which is required if a material breach has occurred.

*Defendant Contends:*

SingleCare does not acknowledge that this is an issue of fact in this case. Further, SingleCare advised Dylan it was not vetting prospects as required by the GSA. It also advised Dylan not to devote too much attention to call centers and other distribution partners that were not prime targets for SingleCare's product. SingleCare advised Dylan that it would terminate its relationship with Dylan if he did not comply with the GSA.

**Issue #7:      Whether Defendant Breached its Duty of Good Faith and Fair Dealing under the GSA by Failing to Provide Plaintiff an Opportunity to Cure.**

*Plaintiff Contends:*

Defendant breached its duty of good faith and fair dealing by changing the terms of the GSA with the proposed Distribution Partners brought in by Dylan, and later terminating Dylan when it would not agree to Defendant's changing material terms of the GSA.

*Defendant Contends:*

SingleCare does not acknowledge that this is an issue of fact in this case. SingleCare terminated the GSA because of Dylan's repeated breaches, not because of his refusal to change material terms of the GSA.

Issue #8: Wayne Goshkarian is the sole member and President of Dylan Consulting.

Issue # 9: The GSA required that Dylan Consulting (referred to in the GSA as "Consultant") do the following under the GSA:

Section 1.1.1. . . .Consultant shall provide SingleCare with the name, market segment and proposed distribution method for each prospect in advance of an introduction. Upon mutual agreement that the prospect is viable, an introduction via email, telephone call or in-person meeting shall be made. . .

Issue #10:   Section 3.1 of the GSA permitted SingleCare to terminate the Agreement for Dylan Consulting's failure to comply with Section 1 of the GSA:

Section 3.1. The length of the Initial term shall be two (2) years, after which the Agreement will renew for subsequent one (1) year periods unless one of the following occurs:

. . .

Section 3.1.2. Notice of Termination with cause is given by either party as result of one of the following (i) SingleCare fails to pay in accordance with the Agreement, (ii) the Consultant purposefully misrepresents SingleCare or otherwise fails to comply with Section 1.

Issue #11: The GSA also provided for the payment of commissions to Dylan Consulting under certain conditions:

Section 2.1. In consideration of the Consultant's commitment to marketing and enrollment in the SingleCare product, SingleCare will pay an override and bonus commission according to the rates listed in Schedule A.

Section 2.2. Cases sold through the Consultant's relationships and submitted using the SingleCare acceptable enrollment methods listed in Exhibit B will inure an override commission and utilization bonuses through the duration of this Contract…

*Exhibit A* — Override and Bonus Structure.  Total Override Commission Per Enrolled Member:

Activated SingleCare Account: $2.00

Utilization Bonus for first physician or dental visit: $3.00…

*Exhibit B* —

9

There are three (3) potential enrollment methods [Electronic; Mailed Invitation; Worksite] that the Consultant or a client/distribution partner may use to enroll members into SingleCare.  Enrollments over the phone or that do not include each all of the enrollee's required information will not be compensable.

Issue #12: SingleCare notified Plaintiff on July 28, 2016 that it was aware of 14 contracts it had received signed by prospects that had received those contracts from Dylan Consulting.  SingleCare notified Plaintiff on both July 28, 2016 and July 29, 2016 that SingleCare did not approve any of those contracts and would not sign them.

Issue #13: SingleCare paid Plaintiff all commissions to which he was entitled under the GSA for enrollments resulting from Plaintiff's efforts through termination of the GSA.


2.	The following are the issues of law to be determined:

**Issue # 1**:	**Whether Defendant breached the GSA by terminating it pursuant to Section 3.1.2.**

*Plaintiff Contends*:

SingleCare breached the GSA by terminating it on July 29, 2016 in the absence of an uncured material breach by Dylan.  At no time did SingleCare inform Dylan that it had breached the GSA, and at no time did SingleCare inform Dylan that it would terminate the GSA if Dylan did not perform in a certain way.  Dylan was significantly increasing SingleCare's customer base at the time SingleCare terminated the GSA.  Dylan worked hand-in-hand with SingleCare on a virtual daily basis and SingleCare knew exactly what Dylan was doing and how it was doing it.  Prior to the GSA, SingleCare's customer base was floundering.  When SingleCare terminated the GSA, its customer

base was flourishing.   SingleCare knew that Dylan was sending the Distribution Partner commission agreement as part of its marketing kit and never informed Dylan that it should not do so.

*Defendant Contends*:

SingleCare did not breach the GSA, as it terminated the GSA for cause as it was entitled to do pursuant to Section 3.1.2, because Dylan failed to comply with Section 1 of the GSA in that Dylan (1) failed to qualify introductions with SingleCare; (2) sent SingleCare contracts to individuals and entities without SingleCare's express prior approval; and (3) sub-contracted with individuals to perform his duties under the GSA.

**Issue # 2**:  **Whether the GSA is voidable as a result of Plaintiff's material misrepresentations in the inducement.**

*Plaintiff Contends*:

Dylan made no material misrepresentations.   Dylan and SingleCare worked on a virtual daily basis where SingleCare knew everything that Dylan was doing and commended it for its production, and terminated the GSA only after Dylan objected to SingleCare's modifying the Distribution Partners' commission agreement, and after SingleCare had learned of Dylan's marketing strategies and network contacts.

*Defendant Contends*:

The GSA is voidable because Plaintiff induced SingleCare to enter into the GSA through Plaintiff's material misrepresentation about the nature of its business relationships and its ability to introduce SingleCare to acceptable distribution partners.

**Defendant asserts the following Issue #3:   Whether Plaintiff's damages are too speculative to be allowed.**

*Plaintiff Contends:*

Dylan's damages are not speculative, but based on actual performance that would have both continued and repeated each month over the 24-month life of the GSA.  Dylan would easily have procured the Distribution Partners willing to enroll SingleCare customers at $10 each on a monthly basis, sufficient to generate at least $10,000 in net commissions to plaintiff for each new month.  In other words, every month, Plaintiff would have been able  to procure Distribution Partners who would have generated enough commissions so that plaintiff would have yielded $10,000 in net commissions for the remainder of the GSA.  Plaintiff was well in its way to bringing in the tens of thousands of new enrollees each month when Defendant chose to terminate the GSA.

*Defendant Contends:*

Plaintiff's damages are entirely speculative because they assume that SingleCare would have been obligated to and would have indeed contracted with any particular potential distribution partner, despite evidence that SingleCare found most of Plaintiff's distribution partner contacts unsuitable, and because Plaintiff assumes, without any evidence, that such potential distribution partners would have enrolled new SingleCare members at the same rate at which other distribution partners had been enrolling new

SingleCare members for the one-month period (June to July 2016) upon which Plaintiff admits it based its damages calculation. In addition, the calculation does not just replicate in each month for the balance of the GSA's term the commissions earned by Plaintiff prior to termination of the GSA but projects exponential growth of those commissions over time. Further, by Plaintiff's own admission, the damages calculation is one of lost revenues and not lost profits. Plaintiff offers no expert testimony to support its damages calculation.

**Plaintiff asserts the following Issue #4**: **Whether Defendant's Commission Payments to Dylan Constitute an Acceptance of the Method by which Enrollees were Procured.**

*Plaintiff Contends:*

Defendant approved of the methods used by Dylan for the procurement of Enrollees by paying Dylan commissions of nearly $10,000 in Dylan's third month of operating under the GSA. Enrollment via telephone communication was such a method.

*Defendant Contends:*

SingleCare does not acknowledge that this is an issue of law in this case. In any event, SingleCare's Commission Payments to Dylan were an attempt to act in good faith and comply with SingleCare's obligations under the GSA and were not an explicit or implicit acceptance or endorsement of Dylan's conduct or a waiver of its breaches.

**E.    LIST OF WITNESSES**

13

## PLAINTIFF'S WITNESSES

a.   <u>Plaintiff's Witnesses Who Shall Be Called at Trial</u>

**1.**   **Wayne Goshkarian**.
         **c/o Plaintiff's counsel.**

Fact Witness.  Mr. Goshkarian will testify as to his personal knowledge of all of the factual history between plaintiff and defendant, and of all material facts in this case.

**2.**   **Darcey Schoenebeck.**
         **c/o Defendant's counsel.**

Fact Witness.  Ms. Schoenebeck will testify as to her personal knowledge of the history between plaintiff and defendant, the formation of the GSA and RSA, plaintiff's operations working with her and Slepak, defendant's communications with plaintiff's Distribution Partners, the proposed modifications of the commission agreement with the Distribution Partners, the decision to terminate the GSA and RSA.

**3.**   **David Slepak.**
         **c/o Defendant's counsel**

Fact Witness.  Mr. Slepak  will testify as to his personal knowledge of the history between plaintiff and defendant, the formation of the GSA and RSA, plaintiff's operations working with him and Ms. Schoenebeck, the approval of plaintiff's actions in communicating with proposed Distribution Partners, the Enrollment process, defendant's communications with plaintiff's Distribution Partners, the proposed modifications of the commission agreement with the Distribution Partners, the decision to terminate the GSA and RSA.

4.     **Rick Bates.**
       **c/o Defendant's counsel**

Fact Witness.  Mr. Bates will testify as to his personal knowledge of the decision to enter into the GSA and RSA agreements, plaintiff's production under the GSA and RSA from April through July, 2016, the problems raised by plaintiff with regard to defendant changing the terms of the Distribution Partners commission agreement, and the decision to terminate the GSA and RSA.

5.     **Ashley Argiropoulos.**
       **641 West Glenn Drive**
       **Phoenix, AZ 85021**

Fact Witness.  Ms. Argiropoulos will testify regarding her services performed for plaintiff under the GSA, including her communications with prospective Distribution Partners.

6.     **Charles Jackson.**
       **15849 N. 71st St, Ste. 100**
       **Scottsdale, AZ 85254**
       **(602) 647-4266**

Fact Witness.  Mr. Jackson  will testify regarding his involvement as a Distribution Partner and / or prospective Distribution Partner, his communications with plaintiff and defendant regarding the GSA.  He will also testify as to his willingness and ability to generate thousands of new Enrollees each month over the remaining term of the GSA.

**OBJECTION**:  SingleCare objects to this proposed witness.  The proposed witness was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1).

Further, Defendant objects to this witness as the witness's testimony is likely to be irrelevant, immaterial, and duplicative.

**7.   Matthew Panzer**.
**Quest Health Corporation**
**5310 NW 33rd Avenue, Ste. 108**
**Ft. Lauderdale, FL 33309**
**(954) 401-5248**
**Mathew.panzer.insure@gmail.com**

Fact Witness. Mr. Panzer will testify regarding his involvement with Quest as a Distribution Partner of defendant, Quest's production in enrolling new customers for defendant and of defendant's changing the terms of its original understanding. He will also testify as to his willingness and ability to generate thousands of new Enrollees each month over the remaining term of the GSA.

**OBJECTION**:  SingleCare objects to this proposed witness.  The proposed witness was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1). Further, Defendant objects to this witness as the witness's testimony is likely to be irrelevant, immaterial, and duplicative. In addition, Plaintiff has not disclosed contact information as required.

**8.   Matt Crowner**
**BenAware**
**777 Baltimore St., Ste. 97**
**Gettysburgh, PA 17325**
**(877) 628-3676**

Fact Witness.   Mr. Crowner will testify regarding plaintiff's introduction of BenAware to defendant, defendant's acceptance of BenAware as a Distribution Partner and

the agreement entered into after plaintiff was terminated.  He will also testify as to his willingness and ability to generate thousands of new Enrollees each month over the remaining term of the GSA.

**OBJECTION**:  SingleCare objects to this proposed witness.  The proposed witness was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1). Further, Defendant objects to this witness as the witness's testimony is likely to be irrelevant, immaterial, and duplicative.

**9.    Ruben Zilberman**.
**Crown Insurance**
**Phoenix, AZ**
**(480) 747-2555**

Fact Witness.  Mr. Zilberman will testify regarding his involvement as a Distribution Partner and / or prospective Distribution Partner, his communications with plaintiff and defendant regarding the GSA.  He will also testify as to his willingness and ability to generate thousands of new Enrollees each month over the remaining term of the GSA.

**OBJECTION**:  SingleCare objects to this proposed witness.  The proposed witness was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1). Further, Defendant objects to this witness as the witness's testimony is likely to be irrelevant, immaterial, and duplicative.

**10.    Chris Allen**.
**MAC Insurance Group**
**Chris.w.allen4@gmail.com**
**(602) 625-3745**

Fact Witness.  Mr. Allen will testify regarding his involvement as a Distribution Partner and / or prospective Distribution Partner, his communications with plaintiff and defendant regarding the GSA.  He will also testify as to his willingness and ability to generate thousands of new Enrollees each month over the remaining term of the GSA.

**OBJECTION**:  SingleCare objects to this proposed witness.  The proposed witness was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1).  Further, Defendant objects to this witness as the witness's testimony is likely to be irrelevant, immaterial, and duplicative.

11. **Paul Andres**.
**Affinity Program Partners**
**pandres@hayscompanies.com**
**(816) 651-6605**

Fact Witness.  Mr. Andres will testify regarding his involvement as a Distribution Partner and / or prospective Distribution Partner, his communications with plaintiff and defendant regarding the GSA.  He will also testify as to his willingness and ability to generate thousands of new Enrollees each month over the remaining term of the GSA.

**OBJECTION**:  SingleCare objects to this proposed witness.  The proposed witness was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1).  Further, Defendant objects to this witness as the witness's testimony is likely to be irrelevant, immaterial, and duplicative.

12. **Bryan Krul**
**HII**
**15438 North Florida Avenue, Ste. 201**
**Tampa, FL 33613**
**(877) 376-5831**

18

**bkrul@hiiquote.com**

Fact Witness.  Mr. Krul will testify regarding his involvement as a Distribution Partner and / or prospective Distribution Partner, his communications with plaintiff and defendant regarding the GSA.  He will also testify as to his willingness and ability to generate thousands of new Enrollees each month over the remaining term of the GSA.

**OBJECTION**:  SingleCare objects to this proposed witness.  The proposed witness was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1).  Further, Defendant objects to this witness as the witness's testimony is likely to be irrelevant, immaterial, and duplicative.

13. **Robert Dial**.
   **ACA Marketplace Enrollment Solutions**
   **rdial@acaenroll.com**
   **Bedford Park, IL**
   **(708) 475-6051**

Fact Witness.  Mr. Dial will testify regarding his involvement as a Distribution Partner and / or prospective Distribution Partner, his communications with plaintiff and defendant regarding the GSA.     He will also testify as to his willingness and ability to generate thousands of new Enrollees each month over the remaining term of the GSA.

**OBJECTION**:  SingleCare objects to this proposed witness.  The proposed witness was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1).  Further, Defendant objects to this witness as the witness's testimony is likely to be irrelevant, immaterial, and duplicative.

14. **Carin Whitehurst**
   **Advocate Planning Co.**

**carin@advocateplanning.com**
**(602) 501-7355**

Fact Witness.   Ms. Whitehurst will testify regarding her involvement as a Distribution Partner and / or prospective Distribution Partner, her communications with plaintiff and defendant regarding the GSA.  She will also testify as to her willingness and ability to generate thousands of new Enrollees each month over the remaining term of the GSA.

**OBJECTION**:  SingleCare objects to this proposed witness.  The proposed witness was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1).  Further, Defendant objects to this witness as the witness's testimony is likely to be irrelevant, immaterial, and duplicative.

**15.    All witnesses listed by defendant.**

**OBJECTION:**   SingleCare objects to this entry because, pursuant to this Court's rule, Plaintiff may not call a witness that it has not specifically named and listed, as Plaintiff may not rely on the witness having been listed or subpoenaed by the Defendant.

**b**.    Plaintiff's Witnesses Who May Be Called at Trial

**1.    Brandon Wood.**
**Premier Health Solutions**
**bwood@premierhsllc.com**
**Plano, TX**
**(214) 436-8200**

Fact Witness.  Mr. Wood will testify regarding his involvement as a Distribution Partner and / or prospective Distribution Partner, his communications with plaintiff and

defendant regarding the GSA. He will also testify as to his willingness and ability to generate thousands of new Enrollees each month over the remaining term of the GSA.

**OBJECTION**: SingleCare objects to this proposed witness. The proposed witness was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1). Further, Defendant objects to this witness as the witness's testimony is likely to be irrelevant, immaterial, and duplicative.

> **2.      Ronald Kleiman.**
> **Benefit Vision, Inc.**
> **rkleiman@benefitvision.com**
> **Long Grove, IL**
> **(800) 810-2200**

Fact Witness. Mr. Kleiman will testify regarding his involvement as a Distribution Partner and / or prospective Distribution Partner, his communications with plaintiff and defendant regarding the GSA. He will also testify as to his willingness and ability to generate thousands of new Enrollees each month over the remaining term of the GSA.

**OBJECTION**: SingleCare objects to this proposed witness. The proposed witness was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1). Further, Defendant objects to this witness as the witness's testimony is likely to be irrelevant, immaterial, and duplicative.

> **3.      Howard LaBow**.
> **National Enrollment Services**
> **hlabow@nesbenefits.com**
> **Northbrook, IL**
> **(800) 966-6637**

Fact Witness.  Mr. LaBow will testify regarding his involvement as a Distribution Partner and / or prospective Distribution Partner, his communications with plaintiff and defendant regarding the GSA.  He will also testify as to his willingness and ability to generate thousands of new Enrollees each month over the remaining term of the GSA.

**OBJECTION**:  SingleCare objects to this proposed witness.  The proposed witness was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1).  Further, Defendant objects to this witness as the witness's testimony is likely to be irrelevant, immaterial, and duplicative.

    **4.**    **Jim Barnes**.
                 **JLBG HEALTH**
                 **James.barnes@jlbghealth.com**
                 **Warrenville, IL**
                 **(800) 800-5735**

Fact Witness.  Mr. Barnes will testify regarding his involvement as a Distribution Partner and / or prospective Distribution Partner, his communications with plaintiff and defendant regarding the GSA.  He will also testify as to his willingness and ability to generate thousands of new Enrollees each month over the remaining term of the GSA.

**OBJECTION**:  SingleCare objects to this proposed witness.  The proposed witness was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1).  Further, Defendant objects to this witness as the witness's testimony is likely to be irrelevant, immaterial, and duplicative.

    **5.**    **Mike Walker**.
                 **Mid Atlantic Benefits Group**
                 **203 Market Street, Ste. 201**

1

2

        **Havre de Grace, MA 21078**
        **(410) 942-0135**

3

Fact Witness.  Mr. Walker will testify regarding Mid Atlantic's involvement as a

4

Distribution Partner for defendant.  He will also testify as to his willingness and ability to

5

generate thousands of new Enrollees each month over the remaining term of the GSA.

6

7

    **OBJECTION**:  SingleCare objects to this proposed witness.  The proposed witness

8

was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1).

9

Further, Defendant objects to this witness as the witness's testimony is likely to be

10

irrelevant, immaterial, and duplicative.

11

    6**.**    **James Halberg**.
        **ACA Marketplace**

12

        **6640 S. Cicero**

13

        **Bedford Park, IL 60638**

14

Fact Witness.  Mr. Halberg will testify regarding ACA Marketplace's involvement

15

as a Distribution Partner and / or prospective Distribution Partner for defendant.  He will

16

also testify as to his willingness and ability to generate thousands of new Enrollees each

17

month over the remaining term of the GSA.

18

    **OBJECTION**:  SingleCare objects to this proposed witness.  The proposed witness

19

was not properly disclosed by Plaintiff pursuant to Rule 26(a)(1)(A)(i) or Rule 26(e)(1).

20

21

Further, Defendant objects to this witness as the witness's testimony is likely to be

22

irrelevant, immaterial, and duplicative.

23

    **DEFENDANT'S WITNESSES**

24

    a.    <u>Defendant's Witnesses Who Shall Be Called at Trial</u>

25

1. **Darcey Schoenebeck**
   EVP, Business Development
   SingleCare Services, LLC
   4100 Regent St., Ste. S
   Columbus, OH 43219

Fact witness.  Will testify regarding the program offered by SingleCare, the reasons for contracting with Plaintiff, the formation of the relationship with Plaintiff, including entering into the GSA, the problems with Plaintiff's performance under the contract, Plaintiff's performance and breach of the contract, the parties' communications about his performance and breach, Defendant's reason for termination of the contract, and Plaintiff's alleged damages.

2. **David Slepak**
   3112 W. Sentinel Rock Road
   Phoenix, AZ 85086

Fact witness.  Will testify regarding the reasons for contracting with Plaintiff, interactions with the Plaintiff, the problems with Plaintiff's performance under the contract, Plaintiff's performance and breach of the contract, and Defendant's reason for termination of the contract, and Plaintiff's alleged damages.

3. **In addition to the aforementioned, SingleCare reserves the right to call any witness listed by Plaintiff.**

   b.   <u>Defendant's Witnesses Who May Be Called at Trial</u>

1. **Julie Van Lieshout**
   4050 East Round Hill Drive
   Phoenix, AZ 85028

Fact witness. Will testify regarding having been offered a distribution partner contract by Plaintiff and the nature of her relationship with Plaintiff.

2. **Rick Bates**
   CEO

24

SingleCare Services, LLC
4100 Regent St., Ste. S
Columbus, OH 43219

Fact witness.  Will testify regarding the nature of SingleCare's program, the reasons for contracting with Plaintiff, the problems with Plaintiff's performance under the contract, Plaintiff's breach of the contract, the parties' communications about his performance and breach, Defendant's reason for termination of the contract, and Defendant's business and decision-making process.

**3.  Wayne Goshkarian**
c/o Plaintiff's counsel

Fact witness.  Defendant may call Mr. Goshkarian either through live testimony or via deposition testimony.  Mr. Goshkarian is the sole member of the Defendant and would testify regarding Plaintiff's  business, his representations on behalf of Plaintiff to SingleCare prior to the contract, contracting with SingleCare, interactions with SingleCare, Plaintiff's performance and breach of the contract, and Plaintiff's alleged damages.

c.  <u>Defendant's Witnesses Who Are Unlikely To Be Called at Trial</u>

**1.  Marianne Ashley Argiropoulos**
641 West Glenn Drive
Phoenix, AZ 85021

Fact witness.  May be called to testify regarding the nature of work she did for Plaintiff contacting and cold-calling potential distribution partners and others.

**Each party understands that it is responsible for ensuring that the witnesses it wishes to call to testify are subpoenaed.  Each party further understands that any witness a party wishes to call shall be listed on that party's list of witnesses; the party cannot rely on the witness having been listed or subpoenaed by another party.**

25

**F.    LIST OF EXHIBITS**

    **1.**    The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:

        **a.**    <u>Plaintiff's Exhibits</u>: **SEE *ATTACHMENT A* FOR A LIST OF PLAINTIFF'S EXHIBITS AND DEFENDANT'S OBJECTIONS THERETO.**

        **b.**    <u>Defendant's Exhibits</u>: **SEE *ATTACHMENT B* FOR A LIST OF DEFENDANT'S EXHIBITS AND PLAINTIFF'S OBJECTIONS THERETO**

    **2.**    As to the following exhibits, the parties have reached the following stipulations:

        **a.**    <u>Plaintiff's Exhibits</u>: **None.**

        **b.**    <u>Defendant's Exhibits</u>: **None.**

    **3.**    As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated below:

        **a.**    <u>Plaintiff's Exhibits</u>:  **SEE ATTACHMENT A FOR A LIST OF PLAINTIFF'S EXHIBITS AND DEFENDANT'S OBJECTIONS THERETO**

        **b.**    <u>Defendant's Exhibits</u>: **SEE *ATTACHMENT B* FOR A LIST OF DEFENDANT'S EXHIBITS AND PLAINTIFF'S OBJECTIONS THERETO**

    **4.**    Each party hereby acknowledges by signing this joint Proposed Final Pretrial Order that any objections not specifically raised herein are waived.

**G.    DEPOSITIONS TO BE OFFERED**

    1.    <u>Depositions Offered by Plaintiff</u>

| **Deposition of David Slepak** |
|---|
| **PAGE:  LINE** |
| 11:2-4 |
| 11:12-13 |
| 12:3-25 |
| 13:1-2; 15-23 |
| 14:21-24 |
| 15:9-14; 15-25 |
| 16:1-9 |
| 17:1-2; 21-25 |
| 18:1-2; 13-25 |
| 20:3-19 – OBJECTION BY SINGLECARE (FRE 401, 402, 403) |
| 21:1-4; 17-25 – OBJECTION BY SINGLECARE (FRE 401, 402, 403) |
| 22:1 - OBJECTION BY SINGLECARE (FRE 401, 402, 403) |
| 25:10-15 |
| 27:6-19 |
| 28:20-25 |
| 29:1-7; 14-16 |
| 30:10-14 |
| 33:1-9; 22-25 – OBJECTION BY SINGLECARE AS TO 33:1-9 (FRE 401, 402) |
| 39:19-23 |
| 42:8-10 |
| 44:1-25 |
| 45:1-25 |
| 46:1-12 - OBJECTION BY SINGLECARE (FRE 106) |

| |
|---|
| 47:17-25 |
| 49:1-25 |
| 50:1-17 |
| 53:7-25 - OBJECTION BY SINGLECARE (FRE 106) |
| 58:4-9 |
| 60:12-25 |
| 61:1-26 - OBJECTION BY SINGLECARE (there is no line 26 in the transcript) |
| 62:1-25- OBJECTION BY SINGLECARE (FRE 106) |
| 66:1-25- OBJECTION BY SINGLECARE (FRE 106) |
| 67:1-25- OBJECTION BY SINGLECARE (FRE 106) |

Defendant objects to Plaintiff's deposition designations as they were not disclosed to Defendant until 2:45pm on Monday, June 4, 2018; thus Defendant has not had an opportunity to review the designations and make objections. Defendant requests that the Court exclude the designations or provide Defendant with additional time to review and lodge objections, if any.

2. Depositions Offered by Defendant

| Deposition of Wayne Goshkarian |
|---|
| PAGE: LINE |
| 6:16-20 |
| 7:17-25 |
| 23:16-23 |
| 24:17-25:25 |
| 29:8-10 |
| 29:15-16 |
| 29:21-25 |
| 31:6-23 |
| 32:23-33:8 |
| 34:6-19 |
| 35:10-36:13 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| Deposition of Wayne Goshkarian |
| --- |
| **PAGE: LINE** |
| 37:4-15 |
| 37:24-38:5 |
| 52:6-10 |
| 68:4-19 |
| 71:5-11 |
| 79:10-80:1 |
| 80:19-81:2 |
| 87:8-18 |
| 88:19-24 |
| 89:9-12 |
| 89:25-91:2 |
| 96:13-21 |
| 97:18-98:9 |
| 102:15-103:19 |
| 106:19-107:18 |
| 107:24-108:11 |
| 108:8-11 |
| 108:21-109:4 |
| 118:18-20 |
| 121:10-122:13 |
| 123:9-14 |
| 124:2-11 |
| 127:12-128:9 |
| 129:19-25 |
| 131:9-25 |
| 135:1-22 |
| 143:18-144:6 |
| 144:14-145:6 |
| 145:9-25 |
| 146:4-147:12 |
| 147:23-25 |
| 148:4-9 |
| 148:13-16 |
| 150:18-151:5 |
| 153:19-154:4 |
| 169:5-25 |
| 170:4-7 |

| Deposition of Wayne Goshkarian |
| --- |
| **PAGE: LINE** |
| 170:10-14 |
| 176:20-25 |
| 177:1-178:1 |
| 181:16-21 |
| 181:25-182:1 |
| 182:3- 183:14 |
| 183:19-184:21 |
| 184:25-185:10 |

3.      **Each party hereby acknowledges by signing this joint Proposed Final Pretrial Order that any deposition not listed as provided herein will not be allowed, absent good cause.**

**H.    MOTIONS IN LIMINE (JURY TRIAL)**

Pursuant to the Court's order, the parties have separately filed any motions in limine they wish to Court to consider.

**I.    LIST OF PENDING MOTIONS**

Pursuant to the Court's order, the parties have separately filed any motions in limine they wish to Court to consider.  Those are the only motions pending.

**J.    PROCEDURES FOR EXPEDITING TRIAL**

The parties do not propose any specific procedures for expediting trial.

**K.    ESTIMATED LENGTH OF TRIAL**

- 3+ hours for opening statements and closing arguments (30 min each for opening, 60-75 mins each for closing)
- Plaintiff proposes 21 hours for his case; Defendant proposes 4 hours for Plaintiff's case.
- 4 hours for Defendant(s) case

- Plaintiff proposes 2 hours for rebuttal; Defendant proposes 1 hour for rebuttal.

**L.   JURY DEMAND**

A jury trial has been requested and the parties stipulate that the request was timely and properly made.

**M.   PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR BENCH TRIALS**

N/A

**N.   JOINT PROPOSED JURY INSTRUCTIONS, JOINT PROPOSED VOIR DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT FOR JURY TRIALS**

The joint Proposed Jury Instructions, joint Proposed Voir Dire Questions, and Proposed Forms of Verdict shall be filed in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

**O.   CERTIFICATIONS**

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1.   All discovery has been completed.

2.   The identity of each witness has been disclosed to opposing counsel.

3.   Each exhibit listed herein: (1) is in existence; (2) is numbered; and (3) has been disclosed and shown to opposing counsel.

4.   The parties have complied in all respects with the mandates of the Court's Rule 16 Scheduling Order and Order Setting Final Pretrial Conference.

5.   The parties have made all of the disclosures required by the Federal Rules of Civil Procedure (unless otherwise previously ordered to the contrary).

6.      The parties acknowledge that once this Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to this Order can be made without leave of Court.

**P.      INFORMATION FOR COURT REPORTER**

The Parties will file a "Notice to Court Reporter" one week before trial containing the following information that may be used at trial:

1.      Proper names, including those of witnesses.

2.      Acronyms.

3.      Geographic locations.

4.      Technical (including medical) terms, names or jargon.

5.      Case names and citations.

FOR PLAINTIFF:

/s/  Mark B. Pyper (with permission)
Mark B. Pyper, State Bar No. 011051
BARTON PYPER, PLLC
4747 E. Elliott Rd., Ste. 29-517
Phoenix, AZ 85044
(602) 615-1841
pyperlaw@aol.com

FOR DEFENDANT:

/s/ Kate E. Frenzinger
Kate E. Frenzinger, State Bar No. 023100
RUSING, LOPEZ & LIZARDI, PLLC
2375 E. Camelback Rd. Suite 600
Phoenix, AZ 85016
(480) 626-1391
KFrenzinger@rllaz.com

/s/ David Barmak (with permission)
David Barmak (Admitted Pro Hac Vice)
Donald C. Davis (Admitted Pro Hac Vice)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.
701 Pennsylvania Avenue N.W., Suite 900
Washington, DC, 20004
(202) 434-7300
DBarmak@mintz.com
DCDavis@mintz.com

1

2

3

4

5

6

7                    **IN THE UNITED STATES DISTRICT COURT**

8                      **FOR THE DISTRICT OF ARIZONA**

9    Dylan Consulting Services, LLC,                Case No. 2:16-CV-02984-GMS

10                            Plaintiff,

11                                                   **JOINT PROPOSED PRETRIAL ORDER**
     v.
12
     SingleCare Services, LLC,
13
                            Defendant.
14

15   Based on the foregoing,

16          **IT IS ORDERED** that this Proposed Final Pretrial Order jointly submitted by the

17   parties is hereby **APPROVED** and **ADOPTED** as the official Pretrial Order of this Court.

18          DATED this _____ day of _____, 2018.

19

20                                        _____

21

22

23

24

25

                                            34